# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

NORMA MURPHY,                                    :

                Plaintiff,

-vs-

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY[1],

                Defendant.          :

Case No. 3:07-cv-023

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

═══════════════════════════════════════════════

# REPORT AND RECOMMENDATIONS

═══════════════════════════════════════════════

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

---

[1] The Court notes that on February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. See, http://www.ssa.gov/pressoffice/pr/astrue-pr.htm. In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in this action. However, in accordance with the practice of this Court, the caption remains the same.

389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

2

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for Supplemental Insurance Income (SSI) in October, 1996, and that application was granted for mood disorders. *See* Tr. 82. Plaintiff continued to receive benefits until 1997 when she successfully completed a trial work period and returned to work. *Id.*

Plaintiff filed a second application for SSI and an application for SSD in May, 2000, alleging disability from November, 1999. (Tr. 15; 80). Plaintiff's application was denied at the hearing level in a decision dated June 24, 2002. (Tr. 37-47). Plaintiff took no further appeal of that denial.

3

Plaintiff filed a second application for SSD on September 11, 2002, alleging disability from June 14, 2000, due to depression, anxiety, panic disorder, posttraumatic syndrome, arthritis in most joints, degenerative arthritis of the spine, bronchial asthma, and a hearing impairment in her right ear. (Tr. 74-77; 110-19). Plaintiff's application was denied initially and on reconsideration. (Tr. 54-57; 59-61). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 891-928), who determined that Plaintiff is not disabled. (Tr. 12-27). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff met the insured status requirements of the Act through September, 2005. (Tr. 19, ¶ 1). Judge Padilla then found that prior to the expiration of her insured status, Plaintiff had severe psychogenic seizures controlled with medication, lumbar disc disease, and bipolar disorder, but that she did not have an impairment or combination of impairments that met or equaled the Listings. *Id.* at ¶ 3; Tr. 20, ¶ 4. Judge Padilla found next that prior to her date last insured, Plaintiff had the residual functional capacity to perform a limited range of light work. (Tr. 21, ¶ 5). Judge Padilla then used sections 202.20 through 202.22 of the Grid for the period before Plaintiff attained age 50 and sections 202.12 through 202.15 for the period after Plaintiff attained age 50 as frameworks for deciding, coupled with a vocational expert's (VE) testimony, and concluded that prior to the expiration of her insured status, there was a significant number of jobs in the economy that Plaintiff was capable of performing. (Tr. 26, ¶ 10). Judge Padilla concluded that prior to the expiration of her insured status, Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 27, ¶11).

Plaintiff has a long history of mental illness, *see, e.g.,* Tr. 159-170, as well as a

history of a seizure disorder. *See, e.g.*, Tr. 180-87.

Examining physician Dr. Danopulos reported on November 21, 2002, that the review of Plaintiff's systems was negative, her upper and lower extremities revealed full ranges of motion, there was no leg swelling, muscles of the right leg were sensitive to palpation, there was no evidence of joint abnormality, that Plaintiff's spine was painless to pressure, her paravertebral muscles were soft and painless to palpation and pressure, that she had a normal gait, and that she got off and on the examining table without difficulty. (Tr. 309-19). Dr. Danopulos also reported that Plaintiff's bilateral straight leg raising was normal, squatting and arising from squatting triggered bilateral knee pain, lumbosacral spine motions were restricted and painful, there was no evidence of nerve root compression or peripheral neuropathy, motor strength was normal in the upper and lower extremities, sensory examination was normal, and deep tendon reflexes were 2+ and equal bilaterally in the upper and lower extremities. *Id.* Dr. Danopulos noted that the objective findings were lumbar spine early arthritis, history of asthma with normal lungs, history of thrombophlebitis in the left leg without evidence of demastasis, right leg neuralgias or myalgias, history of irritable bowel syndrome better without medication, history of partial seizures treated properly with Depakote, history of mental disturbances including depression, bipolar disease, panic disorders, and PTSD needing further evaluation. *Id.* Dr. Danopulos also noted that Plaintiff's ability to do any work related activities was mainly affected and restricted by her mental condition. *Id.*

Consulting neurologist Dr. Tat reported on May 27, 2003, that Plaintiff had a history of seizure disorder since having a closed head injury in the late 1980s, her most recent seizure was approximately six weeks ago but prior to that she had been seizure-free for over a year, she was apparently originally placed on Depakote by a psychiatrist for bipolar disorder and it was noted that

it helped her seizures as well as her migraines, and that a complete neurological examination was essentially within the ranges of normal. (Tr. 328-29). Dr. Tat also reported that her impression was that Plaintiff had a history of questionable seizure disorder possibly of psychogenic etiology, migraine cephalgia that had improved with medication, tobacco abuse, and history of bipolar disorder. *Id.*

The transcript contains a copy of Plaintiff's treatment records from the Hopeland Health Center dated December, 2001, through July, 2003. (Tr. 332-98). These records reveal that Plaintiff was treated at that facility for various medical conditions and complaints including urinary tract infection, low back pain, a thyroid disorder, seizure disorder, acute respiratory infection, arthritis, ear pain, migraine headaches, and mental health issues. *Id.*

The transcript contains a copy of Plaintiff's treatment records from South Community Mental Health Services dated January, 2002, through October 9, 2003. (Tr. 431-599). At the time of her initial evaluation on January 31, 2002, it was noted that Plaintiff was seeking treatment for anxiety, post traumatic stress disorder symptoms, and mood symptoms, and that she reported being hospitalized a number of times during the 1980's and 1990's for bipolar decompensation and post traumatic symptoms. *Id.* It was also reported that Plaintiff was cooperative with the exam, appeared tearful at times during the exam in discussing her stress and previous abuse, had normal speech, slightly increased psychomotor activity with some agitation and restlessness, had fine tremor of both hands, did not have a labile affect, and that she had circumstantial thought processes. *Id.* It was noted that Plaintiff appeared to be of average intelligence, had fair insight and judgment, seemed to understand her illness, seemed to be motivated for treatment, and that she understood her treatment options. *Id.* It was also noted that Plaintiff's diagnoses were bipolar II disorder, currently

depressed, versus major depression, recurrent, post traumatic stress disorder, and features of borderline and histrionic personality disorder. *Id.* Plaintiff was assigned a GAF of 50. *Id.*

On October 9, 2002, psychiatrist Dr. Mathias of South Community reported that she first saw Plaintiff on August 9, 2002, had last seen Plaintiff on September 17, 2002, that Plaintiff's diagnoses was bipolar II disorder, post traumatic stress disorder in partial remission with panic attacks, that she had difficulty with change in routine, that her mood was sad and anxious, that she was depressed, had difficulty with organization, became distraught in crises once a month, and that she might be disheveled and appear unkempt at times. (Tr. 287-89). Dr. Mathias noted that Plaintiff had some improvement with treatment, but that her symptoms still waxed and waned. *Id.*

On March 7, 2003, Dr. Mathias reported that Plaintiff's flow of conversation and speech varied from regular rate and volume to pressured, that her mood and affect varied, was sad, depressed, anxious, and nervous, and that she had severe anxiety exacerbated by current mental difficulties. (Tr. 499-501). Dr. Mathias also reported that Plaintiff was oriented, that her concentration had decreased with anxiety, that she was being treated with Depakote and counseling, that her attention had been poor, that she had fair ability with respect to social interaction, had some difficulty with changes and new environments, and that she would perform simple tasks better than complex tasks. *Id.*

Plaintiff continued to receive mental health treatment at South Community during the period October 24, 2003, through March 19, 2004. (Tr. 602-14). During that period, Dr. Mathias reported that Plaintiff was unable to perform most mental work related activities. *Id.*

On October 28, 2003, Plaintiff was brought to emergency room after she made suicide-related comments. (Tr. 615-28). At that time it was noted that Plaintiff was oriented,

depressed, had flight of ideas, was anxious and agitated, was tearful and crying, and that she was angry and sad. *Id.* Plaintiff denied suicidal ideation, was treated, evaluated by the mental health care provider, and discharged. *Id.*

In August, 2004, Plaintiff was evaluated by Dr. Buenaventura at DaytonPainMed. (Tr. 660-80). Dr. Buenaventura reported that Plaintiff was oriented, pleasant, somewhat disorganized, had a slow pained gait, poor heel and toe walking, and that she had decreased ranges of motion. *Id.* Dr. Buenaventura also reported that Plaintiff's lumbar spine was tender to palpation, her posterior superior iliac spines and greater trochanteric area were tender bilaterally, her left knee was tender. *Id.* Dr. Buenaventura opined that Plaintiff's diagnoses were thoracic spondylosis, lumbar spondylosis, scoliosis, and knee arthritis and he recommended Plaintiff continue taking medication, get a TENS unit, and epidural steroid injections in the future. *Id.*

On November 24, 2004, Dr. Buenaventura reported that Plaintiff was obese, in no apparent distress, had some edema and cellulitis of both ankles, walked with a slow, pained gait, had poor toe and heel walking, and that she was tender to palpation throughout her low back and bilateral hip areas. *Id.* Dr. Buenaventura also reported that Plaintiff's x-rays showed mild narrowing of the L5-S1 disc space, normal thoracic spine, hips, pelvis, and knees, and that the MRI of her brain showed right mastoiditis. *Id.* Dr. Buenaventura noted that his impressions were lumbar spondylosis, degenerated disc, and scoliosis. *Id.* Dr. Buenaventura also noted that Plaintiff had a significant psychiatric history including bipolar disorder and chronic pain, that given her long pre-existing history of pain, he did not expect her to make any substantial recovery, and that her prognosis for future employment was poor. *Id.* Dr. Buenaventura opined that Plaintiff was able to lift/carry less than 5 pounds occasionally, stand/walk for 1 hour in an eight-hour workday and for

0.25 hour without interruption, her ability to sit was not affected by her impairment, she was able to sit for 2 hours in an eight-hour workday and for 6 hours without interruption [sic], she should never climb, crouch, kneel, crawl, and that she was not able to perform medium, light, or sedentary work. *Id.*

Plaintiff continued to receive treatment at South Community during the period January 6, 2004, through December 10, 2004. (Tr. 706-35).

Examining psychologist Dr. Deardorff reported on April 15, 2005, that Plaintiff was quiet but cooperative, appeared to be anxious and depressed, did not appear to exaggerate or minimize her difficulties, was adequately motivated, displayed no loose associations or flight of ideas, and that she was adequately organized and easily followed conversation. (Tr. 736-41). Dr. Deardorff also reported that Plaintiff was preoccupied with her difficulties but displayed no indications of obsessions, compulsions, paranoid ideation, delusions or hallucinations, that her complaints of pain, shortness of breath, limited energy, and easy fatigueability could be indicative of somatization, that she was alert and oriented, not confused, her short term memory was weak, and that her judgment appeared to be sufficient for her to make decisions affecting her future and to conduct her own living arrangements efficiently. *Id.* Dr. Deardorff opined that Plaintiff's diagnoses were mood disorder NOS and panic disorder with agoraphobia and he assigned Plaintiff a GAF of 55. *Id.* Dr. Deardorff also opined that Plaintiff's ability to relate to others was moderately impaired, her ability to understand, remember and follow simple instructions was moderately impaired, her mental ability to maintain attention, concentration, persistence and pace was moderately impaired, and that her mental ability to withstand the stress and pressures associated with day-to-day work activity was seriously impaired. *Id.*

On February 10, 2005, Dr. Mathias reported that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, marked deficiencies of concentration, persistence, or pace, and four or more repeated episodes of decompensation. (Tr. 744-51).

In April, 2005, Plaintiff underwent a functional capacity evaluation. (Tr. 754-63). At that time, Mr. Miller, a physical therapist, noted that Plaintiff demonstrated the ability to work in the sedentary category, that she did not tolerate static postures well, that Plaintiff's desire was to remain off work due to her medical diagnoses, fatigue level and decreased strength, that she could walk for one hour before needing a break, could sit for eight hours with breaks, was able to lift/carry up to five pounds frequently and ten pounds occasionally, and that her abilities with respect to pushing/pulling, bending, reaching, were markedly limited, and her ability with respect to handling was moderately limited. *Id.*

The transcript contains a copy of Plaintiff's treatment records from treating physician Dr. Hanshaw dated June 18, 2001, through June 27, 2005. (Tr. 764-80). These records indicate that Dr. Hanshaw treated Plaintiff for various medical complaints and conditions including diarrhea, leg cramps, cough, head cold, heart burn, morbid obesity, nicotine addiction, hyperlipidemia, gastritis, hemorrhoids, and irritable bowel syndrome. *Id.*

The transcript contains a copy of Plaintiff's treatment records from the Sycamore Primary Care Group dated December 9, 2004, through October 31, 2005. (Tr. 792-865). Those records show that Plaintiff was treated at that facility for various medical conditions and complaints including nicotine dependence, post menopausal bleeding, seizure disorder, urinary tract infection, diabetes mellitus Type II, hypothyroidism, muscle spasm, dermatitis, and phlebitis. *Id.*

Plaintiff continued to receive mental health treatment at South Community during the period December 15, 2004, through November 9, 2005.  (Tr. 866-90)

The medical advisor (MA) testified at the hearing that the record established that Plaintiff has had a diagnoses of bipolar disorder for a number of years, with medication she has been appropriately managed, her symptoms kind of wax and wane, when she is under stress it appears that she will become even more depressed or more agitated, and that overall she has been managed on an outpatient basis over approximately the last nine years.  (Tr. 916-22).  The MA testified further that Plaintiff's anxiety attacks were probably stress induced, her history indicates that she was capable of handling simple routine tasks, she did not meet the Listings, she should be limited to low stress jobs, she could not perform jobs requiring production quotas, and that she should have only occasional contact with others.  *Id.*  The MA testified further that Plaintiff had been compliant with her treatment, her treatment was consistent with her diagnoses, and that she would not have difficulty maintaining attention and concentration for tasks that are performed at a comfortable pace for her.  *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting Dr. Mathias' and her mental health counselor's opinions and by rejecting Dr. Buenaventura's and Mr. Miller's opinions.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Comm'r of Soc. Sec.*, ___ F.3d.___, No. 04-01341, 2007 WL 2752888 at *7 (6th Cir. Sept. 24, 2007), *citing, Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)).  In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of*

11

*Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* ___ F.3d at ___, 2007 WL 2752888 at *7, *citing, Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

12

Plaintiff argues that the Commissioner erred by failing to give the proper evidentiary weight to her treating psychiatrist Dr. Mathias' opinion as to her mental residual functional capacity.

In rejecting Dr. Mathias' opinion that Plaintiff is essentially severely limited in her abilities to perform work-related activities, Judge Padilla determined that it was not supported by Dr. Mathias' contemporary clinical notes and was inconsistent with other evidence of record. (Tr. 24-25).

Although Dr. Mathias essentially opined that Plaintiff was severely limited in her abilities to perform work-related activities, the contemporaneous clinical notes from South Community do not support that opinion. For example, those records indicate that Plaintiff responded well to therapy and, in fact, enjoyed group therapy. In addition, the notes indicate that Plaintiff's condition improved with medications and therapy, her mood was stable, and that her symptoms increase only when she is in stressful situations such as dealing with her disabled husband. In addition, Plaintiff has been treated conservatively and has not required hospitalization for treatment of her mental illness since about 1994. *See* Tr. 159-70.

Further, Dr. Mathias' opinion is inconsistent with the other evidence of record. For example, examining psychologist Dr. Deardorff determined that Plaintiff was, at worst, moderately impaired, although her ability to withstand the stress and pressures associated with day-to-day work activity was seriously impaired. The Commissioner made allowances for Plaintiff's inability to deal with stress by limiting her to low stress jobs that are simple, repetitive tasks with minimal contacts with others and which are not fast-paced, have no production quotas, and do not involve teamwork.

Dr. Mathias' opinion is also inconsistent with the MA's opinion as well as the reviewing mental health experts' opinions. (Tr. 290-307). Finally, Dr. Mathias' opinion is

13

inconsistent with Plaintiff's reported activities which include, for example, visiting others, caring for a pet, cooking, washing dishes, helping with laundry, shopping, dusting, going to church, watching television, gardening, and spending the night at her girlfriend's home.  (Tr. 891-908).

Under these facts, this Court cannot say that the Commissioner erred by failing to give controlling, or even great, evidentiary weight to Dr. Mathias' opinion.

In her second Issue, Plaintiff argues that the Commissioner erred by rejecting Dr. Buenaventura's opinion as well as physical therapist Miller's opinion.

In rejecting Dr. Buenaventura's opinion, Judge Padilla noted that Dr. Buenaventura evaluated Plaintiff on one occasion and therefore he could not be considered a treating source. (Tr. 23-24).   In addition, Judge Padilla determined that Dr. Buenaventura based his opinion on Plaintiff's subjective complaints which were not fully supported by the evidence.  *Id.*  This Court cannot say that the Commissioner erred in his evaluation of Dr. Buenaventura's opinion.

As noted above, Dr. Buenaventura, examined Plaintiff on only one occasion, August 30, 2004.  At that time, Dr. Buenaventura reported few objective clinical findings including, at worst, tenderness of the lumber spine, posterior superior iliac spines, and left knee.  Based on that one examination, Dr. Buenaventura reported some three months later that Plaintiff was capable of, at best, sedentary work.

First, Dr. Buenaventura does not satisfy the *Cruse* description of "treating physician". Specifically, Dr. Buenaventura examined Plaintiff on only one occasion.   In addition, Dr. Buenaventura based his conclusions on Plaintiff's subjective complaints, the only objective clinical findings he reported were mild in nature, and the x-rays performed in conjunction with his evaluation revealed only mild abnormalities of Plaintiff's lumber spine and normal thoracic spine,

14

hips, pelvis, and knees. Additionally, Dr. Buenaventura's opinion is inconsistent with Dr. Danopulos' opinion as well as the reviewing physician's opinion. (Tr. 320-27). Finally, Dr. Buenaventura's opinion is inconsistent with Plaintiff's admitted activities.

Although Plaintiff alleges in the "Issues Presented" identified in her Statement that the Commissioner erred in his evaluation of the physical capacities evaluation performed by physical therapist Miller, (Doc. 7 at 1), she does not present a specific argument about that issue. (Doc. 7 at 19; *see also*, Doc. 11 at 4). Rather, she seems to argue only that Mr. Miller's findings and opinion support Dr. Buenaventura's opinion and that his opinion is entitled to "consideration". *Id.*

First, the Court notes that a physical therapist is not recognized as an acceptable medical source. *Neirzwick v. Comm'r of Social Security,* No. 00-1575, 2001 WL 303522, *4 (6th Cir. Mar. 19, 2001), *citing, Walters,* 127 F.3d at 530-531; *see also,* 20 C.F.R. § 1513. Nevertheless, as with Dr. Buenaventura's opinion, Mr. Miller's opinion is inconsistent with other substantial evidence in the record as a whole such as Dr. Danopulos' opinion, the reviewing physician's opinion, and Plaintiff's testimony as to her activities. *See supra.*

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

15

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

November 9, 2007.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).